Thank you, Judge Burson, and may it please the Court, my name is Mark Caldwell. I'm representing Ms. Guzman this morning in this Social Security Disability Appeal. There are several issues in this case, but two, of course, are dispositive, the first being the opinion of the treating rheumatologist, Dr. Bala, who treated Ms. Guzman for about a decade, I guess, and he's the rheumatologist who's the appropriate specialist for the impairment from which Ms. Guzman suffers. Could you speak just a bit louder and a bit more slowly, please? Certainly, Your Honor. It's a common failing of mine. I apologize. I was talking about Dr. Bala, the rheumatologist, and noting that his opinion would be dispositive in this case. The other issue, of course, is Ms. Guzman's testimony. She testified essentially she lays down about four hours out of a typical eight-hour day, and that's facially inconsistent with the ability to sustain work on a regular and continuing basis. However, knowing that I have to convince the Court on one of those two issues, I would like to do something a little unusual here. I'd like to jump to the remedy and talk about that, because I think it's important to discuss what is known as the crediting as true rule in the Ninth Circuit, and I did mention this briefly in my Rule 28J letter to the Court. There is a case fairly recently called Vasquez, where this Court said there is a split in authority in the Ninth Circuit on the crediting as true rule, and that is incorrect. There is not a split in authority. Vasquez talked about two earlier cases, the first being Lester v. Chater in 1996, and the second one being a more recent case called Conant. In Lester, the Court remanded for payment of benefits, and in Conant, the Court remanded for further proceedings. Those are different outcomes, but they are not inconsistent because the facts of the case were different. In Lester, this Court correctly noted that when the improperly discredited evidence is credited and there are no other issues that must be decided, and when that evidence is credited and ALJ would be required to make a finding of disability, the proper remedy is to credit that evidence as true and remand for determination of benefits. In Conant, the Court cited Lester and said, well, we're not convinced that the crediting as true rule is mandatory in the Ninth Circuit. Here's where the problem arises. There is a lack of focus on where the discretion comes to bear. The discretion is in deciding whether those three items that I just mentioned apply in the facts of any particular case. Once the discretion is exercised to answer all three questions in the affirmative, then the rule becomes mandatory. There is no other reading of the seminal case, Varney 2, that could possibly make sense, and this Court has over and over and over again stated that to be the rule. It started in Varney, Smolin, Lester, Reddick, Ryan. Okay. So let's assume you're right. It would be helpful to me to know how all that relates to the facts of this case in that there is the Dr. Bala issue, there is the question of her credibility. Correct, Your Honor. There's also a question, as I understand it, with regard to Dr. Harris and the remand where the ALJ was asked to essentially consider Dr. Harris. Correct. So there are three possible places where we might decide that there was a problem, and I guess it would be helpful to me to know, A, which do you think matters, and, B, how does the crediting as true relate to them? Okay. First of all, regarding Dr. Harris, the Commissioner asserts in his brief that the ALJ relied upon Dr. Harris. Dr. Harris's name does not even appear in the decision under review. And this Court has held time and time again, most recently in Bray, B-R-A-Y, that this Court's review of an ALJ decision is limited to the four corners of that decision. If Dr. Harris's name is not even appearing in the decision, how can the Commissioner make a valid argument that the ALJ was relying upon that? That said, I will concede that the present ALJ decision says, well, I'm relying on the testimony of the vocational expert at the second hearing, because Judge Knight, the judge we're talking about here, didn't take any vocational expert testimony at all. The vocational expert testimony that Judge Knight refers to was in response to a testimony. The part of Dr. Harris's testimony was, well, I think she could do sedentary work with a sit-stand option, the ability to move at will. But when he was asked about fatigue, he said, no, I can't say that a person with this problem would be able to sustain sedentary work on a regular and continuing basis. And the Appeals Council in its decision underlined the words regular and continuing basis when it remanded on the second ALJ decision. So when the Commission ---- And did the Appeals Council specifically say to deal with Dr. Harris's testimony or to deal with ---- I mean, what was the basis for the Appeals Council's remand? The Appeals Council remand order was based on the fact that the second ALJ, Judge Tusevich, had a selective reliance upon Dr. Harris's testimony. As soon as Dr. Harris said sedentary work with a sit-stand option, the administrative law judge turned to the vocational expert and just said, assume those limits, period. End of discussion. The Appeals Council said, wait a minute. When Dr. Harris was asked about the effect that fatigue would have, Dr. Harris said that a person with these elevated rheumatoid factors that were as high as 600, where the upper limit of normal is 40, would be expected to have some fatigue. And when asked directly, he said, no, I cannot state that a person with the level of fatigue that would be expected here would be able to sustain work on a regular and continuing basis. Can you help me understand what the ALJ's responsibility is on determining the RFC? So there was the prior hearing where Harris made these statements and there was a V.E. who testified. And then in the record we have a report by, I guess, a non-reviewing State examiner that says basically Ms. Guzman isn't, can do a much greater range of things than Dr. Harris said. And then the ALJ made a determination which was not specifically relying on either one of them. What authority does the ALJ have? So in other words, if we find that his determination is supported by the record and he did make other determinations regarding not believing Ms. Guzman's testimony about fatigue, can he put these pieces together and say, okay, here's my RFC? Or is he not allowed to do that? I think an administrative law judge is certainly allowed to make inferences from the medical evidence in the record. What an administrative law judge should not be allowed to do is play doctor. And that's what the administrative law judge, the third one that we're talking about, did, because the administrative law judge said, well, I'm rejecting Dr. Bala's assessment because it's not supported by the objective findings in the record. Well, he found an inconsistency. He said the medical source statement is inconsistent with his treatment notes, and you could agree or not agree or whether it's supported in the record. But let's just assume it was supported by the record. So he discounts Dr. Bala's medical source statement. And then he's looking at Dr., I guess, Halsey. Is that right? Or Halsey? That's the neurologist, Judge. That's pretty much irrelevant to what we're talking about here. And he's looking at the RFC that was in the record. And apparently, by reference, he was looking at Dr. Harris's testimony, and he makes a specific adverse credibility determination. And then he says, and here's the RFC. So why is that playing doctor? Isn't that his job, to determine the RFC? The answer to the last part is yes. The answer to the first part is no. It is playing doctor. I was going to hope to reserve some time, but obviously I need to answer your question. An ALJ can't just out of thin air say this is what the RFC is. An ALJ has to have a medical basis. The only medical basis the administrative law judge cited in this record is the checkbox form completed by an orthopedist in 1998 who referred to two progress notes. That's it. That's all that appears in this record. I'm up on my time. May I reserve? Yes, thank you. Thank you. Good morning, Your Honors. May I please the Court? Brenda Pullen for the Commissioner. And I'd like to go ahead and address your questions that were raised with Plaintiffs' Appeals Council. With respect to the credit as true rule, that seems to put the cart before the horse in this case. That's a remedy, and it's only available in the unusual case. This is not that outlier case. With respect to the Appeals Council vacating the second ALJ's decision, the evidence that was underlying that decision is still in the record. So Dr. Harris's testimony is still valid and legitimate. The Appeals Council simply said that the ALJ needed more discussion and explanation of why it was there. And he had none, in fact. I mean, in fact, the second ALJ said nothing about Dr. Harris and nothing about Correct. So why isn't that just? He did not rely on Dr. Harris's. Contrary to Plaintiffs' argument, the Commissioner asserted that Dr. Harris's was the closest thing to what the ALJ ultimately decided. And therefore, he was correct in relying on the vocational expert's testimony that rested on that RFC finding. But the ALJ did not rely on Dr. Harris's RFC. So what is she relying on? The ALJ, in fact, crafted the RFC as he is obligated to do by regulation. In response to your question, Judge Aicuda, the ALJ need not adopt a medical opinion in whole. He can, in fact, decide to credit certain parts of it or look at medical evidence in light of various statements in that medical opinion. And he, the ALJ, in this case, correctly put together the RFC based on the entirety of the medical evidence. But he what did the ALJ have? He had this checklist from 1998, which, first of all, was a checklist, was not a medical explanatory in any way, did not have a person who was available to be cross-examined, and was five years before the end of her insured period. Correct. And then he had Dr. Harris, right? And Dr. Harris said two things. He said he had, he talked about her functional capacity, and then he said, but he couldn't say that she could actually work a full day. So doesn't the ALJ at least oblige to explain why he relied on part of what Dr. Harris said and not the other part of what Dr. Harris said? Isn't that the reason for the remand from the Appeals Council? In fact, Dr. Harris said that he couldn't say with certainty that the plaintiff could work a full day based on her statements of fatigue. That's a credibility issue that is dealt with otherwise in plaintiff's brief. But with respect to the ALJ's decision, he is permitted to look at Dr. Harris's testimony, and he did not rely on it in his decision. He actually spent pages and pages going through the medical evidence that is in this case, the normal cervical examination, the normal CTs, the normal MRIs of her after she was hit by a softball, the normal chest examinations that was worked up extensively and never came out with any definitive diagnosis besides emphysema after she had been smoking for 20 years. So the ALJ goes through this for pages. But there was a definitive, there were definitive diagnoses of fibromyalgia and rheumatoid arthritis by her doctor who saw her for 10 years. Yes. However, there were no functional limitations from them. There was no swelling. There was rarely inflammation. So if a person has a diagnosis, that's one thing. But she was also on rather extensive medication for these. Which seemed to address her complaints. But I still don't understand what you're saying. So, yes, the ALJ could rely on medical evidence in coming to its conclusion. But what was the medical evidence with respect to the fatigue issue, given what Dr. Harris said? With respect to her fatigue issues, so we're going back to the credibility argument, the ALJ considered her extensive daily activities, including the fact that she was in bars two to three times a week, that she played pool. She wasn't in bars two or three times a week. She said she was in bars two or three times a week years before. During the time at issue. Well, during a small part of the time at issue. Right. That she had conservative treatment. She was treated with medication and that she reported that they worked. And that her testimony, frankly, didn't fit with any of the medical evidence in the record besides her subjective complaints to Dr. Bala. Let's say, let me try two different hypotheticals. First, if we say that the ALJ's adverse credibility determination was supported by substantial evidence. So we discount her statements and reports of fatigue. Is there enough evidence, then, in the record to support the ALJ's RFC, even though he doesn't specifically discuss Dr. Harris? I think that the ALJ here gave plaintiff the benefit of the doubt on some of that. So there is medical evidence that the ALJ discussed and pointed to. But with respect to the sit-stand option, he credited her testimony in part because she stated that she couldn't sit for a certain duration of time. He seemed to have taken every shred of legitimate evidence that he could and given plaintiff the benefit of the doubt on that respect. And then what do we do if we say the ALJ's adverse credibility determination was not supported by substantial evidence? In that case, we would need to remand for further proceedings because there is so much conflicting evidence in the record, which is the ALJ's purview to look at and evaluate all this conflicting evidence. And it's not at all clear from the record that she's unable to sustain sedentary work, the modest demands of sedentary work with a sit-stand option. So based on the record we have now, she has not proven that she is unable to do that particular type of work. Could she rely on the activities, the social activities of the claimant too? Oh, yes. Yes, it's perfectly appropriate for her to rely on the reported activities of her taking care of her children. The activities that she reported were routine and regular activities, which tend to indicate that she could perform ongoing activities. Now, I'm looking at Dr. Harris's testimony, and it doesn't seem to me in any way to rely on her self-reported fatigue. He says it depends how much fatigue she's having. Actually, I would expect some fatigue with a positive rheumatoid test. Is the fatigue a side effect from the medication? No, it's from the disease. And then he says she would have an opinion as to whether she would be able to sustain eight hours, five days a week. I'd have to hedge in it. I'd say it would be a factor. I couldn't say with a reasonable degree of certainty that she'd be so fatigued that she couldn't get out of the chair. Basically, you're saying she can't say with a degree of certainty that she could either. Correct. So he's relying on his knowledge of the disease, not on her subjective testimony. Respectfully, I disagree. I think that he's saying that he can't say with any degree of certainty, a reasonable degree of certainty, that she would be so fatigued. He can't make a judgment on her level of reported fatigue. And that is what. But he does say that fatigue is an aspect of this disease. That some fatigue would be. Although he also pointed out that her symptoms and all the findings supported a diagnosis of rheumatoid arthritis. The part that I'm having the biggest problem with is that the appeals counsel looking at this apparently said the ALJ didn't do her job. The second. The second one. Decision goes back has another here and go deal with do something with Dr. Harris and do something. Tell us what you think about it. And then we go back and then nobody does tell us what they think about it. They just ignore it. And yet it's been built into the RFC. So I don't understand why that's just not following. There's been a perceived problem and it hasn't been cured. The appeals counsel did say to the ALJ on the second go around that they had not explained enough why they were waiting Dr. Harris's opinion. And he did. And then they didn't explain it at all. They vacated that decision and it went back to this new ALJ who looked at the evidence and did not rely on Dr. Harris's opinion. But he did rely on it because it was built into the RFC. Dr. Harris came to the same RFC that the ALJ ultimately came to. And that was the basis for the second ALJ finding the RFC. And the third ALJ didn't revise it, so it was relying on it. And it's just a shell game otherwise. Well, I would like to point out, though, that the ‑‑ it went back to the appeals counsel and they took another look at it and thought that the third ALJ had done an acceptable job. Did it go back the second time? The third time. The third time. No, it got ‑‑ Okay. Thank you very much. Your time is up. Mr. Caldwell. Judge, you can't have it both ways. You can't make one argument in your brief and another argument an oral argument. If I heard correctly, the commissioner is contending that the administrative law judge did not rely upon Dr. Harris. Page 31 of the commissioner's brief. The ALJ used Dr. Harris's opinion to formulate the hypothetical question that the ALJ presented to the vocational expert. Well, that was true of the second ALJ. No. The commissioner is talking about ALJ night when the ‑‑ But she didn't formulate a question because she just used the RFC that already existed. She's ‑‑ the second ALJ used Dr. Harris. The third ALJ, as you correctly note, did not take vocational expert testimony, but the third ALJ relied upon the vocational expert testimony at the second hearing to form the jobs that the person could perform because the exact same jobs appear in the second ALJ's decision and the third's. Did the third ALJ take any evidence? Well, she took Ms. Guzman's testimony. That's all. But no, no vocational expert testimony. No medical testimony. No. No. All right. Thank you. Thank you very much. The case of Guzman v. Astra is submitted.
judges: Noonan, Berzon, Ikuta